**Peter Hunt COE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 64125.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 21, 1984.

Rehearing Denied Feb. 6, 1985.

---

Robert Tarrant, Donald Ervin, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann and Gene Nettles, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

McCORMICK, Judge.

Appellant was convicted of aggravated robbery. Punishment, enhanced by a prior conviction, was assessed at sixty-three years.

In his first ground of error appellant contends that the trial court erred in overruling his motion to suppress evidence in that his arrest was predicated upon mere suspicion, rather than probable cause.

Officer W.E. Spies of the Village Police Department testified that he was on patrol around noon on February 12, 1979, when he received a radio broadcast from his dispatcher concerning the commission of a burglary at 11918 Doncaster. The homeowner had returned home shortly before noon to find his home being burglarized. The door knob to the home had been pried off and marks left at the scene indicated the use of channel-lock pliers. The burglar had been scared off and the homeowner reported seeing a well-dressed white male of average height and build, in his mid-twenties to early thirties, drive away from the scene in a two tone blue Ford Thunderbird, with fancy wheel covers and with red paper buyer's tags in the left rear window. Around 2:15 that afternoon, Officer Spies saw a car matching that description parked in the driveway of 260 Hedwig Road, some two and a half miles from the scene of the earlier burglary.

As Officer Spies watched he saw an individual matching the description set out above and later identified as the appellant

get out of the Thunderbird, walk to the front door of the house and knock. The individual then walked to the south corner of the house and looked back. Upon seeing Officer Spies watching him, appellant returned to the front door and resumed his knocking. Realizing that the individual and the car matched the description he had earlier received, Officer Spies pulled his patrol car up into the driveway behind the Thunderbird. As Spies got out of his car appellant walked over to him. Spies asked appellant if he lived there. Appellant replied that he did not and he pulled out a business card, gave his name and said he was trying to see about doing some landscaping work at the house. Officer Spies thought this was strange in that the yard was already in the process of being landscaped. Officer Spies looked into the Thunderbird and lying in plain view was a pair of channel-lock pliers, a bank bag and a type of club. Spies called his dispatcher and checked appellant's name. This check revealed that appellant had a lengthy criminal record and was currently on parole. At that point, Spies placed appellant under arrest for suspicion of burglary and for carrying a club.

■ The arresting officer, a veteran of twenty-eight years on the police force, at the time of his sighting of appellant had specific and articulable facts when taken with rational inferences from those facts which clearly warranted him in stopping and inquiring of appellant. See *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Marrs v. State*, 647 S.W.2d 286 (Tex.Cr.App.1983). The officer's conversation with appellant, combined with the facts and information already known to the officer, his observation of the channel-lock pliers lying in plain view in appellant's car, and the information regarding appellant's criminal history warranted the officer in believing that appellant had committed the earlier burglary. *Hawkins v. State*, 660 S.W.2d 65, 70 (Tex.Cr.App.1983); *Marrs v. State*, supra. Furthermore, the observation of the club, described by the officer as a tire tool from which the round end had been removed and which was wrapped with

tape, warranted the officer in arresting appellant for the offense of carrying a club. V.T.C.A., Penal Code, Section 46.02; V.T.C.A., Penal Code, Section 46.01. We find probable cause existed for arresting appellant. This ground of error is overruled.

■ Next, appellant contends that because his arrest was illegal the trial court erred in admitting into evidence the channel-lock pliers and the bank bag which were seized without a search warrant. As noted above, appellant's arrest was not illegal. Furthermore, both the channel-lock pliers and bank bag were in plain view and thus subject to seizure under the rule espoused in *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). Finally, as to the channel-lock pliers, they were never admitted into evidence during the trial of this cause. Appellant's second ground of error is overruled.

In his third and fourth grounds of error appellant argues that the court erred in overruling his motion to suppress the identification of appellant. The record shows that after the arresting officer seized the items lying in plain view in appellant's car, one of which was the bank bag, he opened the bank bag and found a pair of sunglasses, a black wig and a .357 Magnum. These items tied appellant to the instant offense, the robbery at a theater. Two theater employees, Jeff Norman and John Hinojosa, were summoned to the police department to view a lineup. Before the lineup began, Norman and Hinojosa were shown the black wig, the sunglasses, the gun, a couple of bank bags, some makeup and two cotton gauze pads. The officers asked the two employees if they could identify the items and both employees identified the sunglasses, the wig and the gun as being used in the robbery.

Evidence from both the pretrial hearing and the trial showed that both Norman and Hinojosa thought they recognized appellant when they first saw him in the lineup. However, at the request of Norman, all the people in the lineup put on the wig and the

sunglasses. Both Norman and Hinojosa testified that after seeing appellant in the wig and the sunglasses, they became positive in their identification. Officer M.D. Beale, the Houston police department detective who conducted the lineup testified that bboth Hinojosa's and Norman's identifications were not positive but were "strong tentative."

Appellant argues that the wig and sunglasses were illegally seized from the bag and had they not been used at the lineup, the witnesses would not have been able to identify him. Thus the witnesses' identification of him was "fruit of the poisonous tree" and should not have been admissible.

As we held above, the seizure of the bag which contained the items was proper. Thus the issue to be resolved is whether the officer should have opened the bag and seized the items contained therein. Recently, in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, 514 (1983), the Supreme Court wrote:

"As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States*, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949)." *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, 514 (1983).

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that police officers who have probable cause to believe that contraband is contained somewhere in an automobile "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" 102 S.Ct. at 2157. In *Ross*, the Supreme Court approved the officer's search of a closed brown paper bag and a zippered red leather pouch which they found in the trunk of Ross' car.

▇▇▇ Applying these considerations to the instant case, we find that under the circumstances a reasonable man could have believed that the bag might have contained evidence incriminating appellant in the burglary that had occurred earlier in the day. The fact that the items found in the bag incriminated appellant not as to the burglary but as to the instant offense does not in any way negate the lawfulness of the opening of the bag and the seizure of its contents. *Esco v. State*, 668 S.W.2d 358 (Tex. Cr.App.1984, No. 61,501, May 2, 1984) (opinion on rehearing). Because we have found the seizure of the items in the bag was lawful, we also find that the use of some of those items, that is the sunglasses and the wig, in the lineup did not in any way taint the witnesses' identification of appellant. Both witnesses testified at trial that their identifications of appellant were based upon their observations of appellant on the day of the offense. There is nothing in the record to suggest any type of suggestive procedures that would have unfairly aided the witnesses in identifying appellant as the individual who committed the instant offense. Appellant's third and fourth grounds of error are overruled.

In his fifth ground of error, appellant argues that the trial court erred in not granting a mistrial when defense counsel asked the officer who conducted the lineup if the two witnesses had made a positive identification of appellant and the officer gave the following answer:

"A. No, sir; they were the other complaining witnesses in the other robberies.

MR. TARRANT: I ask for a mistrial.
THE COURT: Overruled."

Pursuant to defense counsel's request, the trial judge then instructed the jury to disregard the officer's statement.

Although the proper method of preserving error in a situation such as this is to (1) make an objection; (2) request an instruction to disregard; and (3) make a motion for a mistrial, the method employed by counsel will be deemed sufficient in the instant case. *Koller v. State*, 518 S.W.2d 373, 375 (Tex.Cr.App.1975).

"It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. E.g., *Rubio v. State*, 607 S.W.2d 498 (Tex.Cr.App.); *Christiansen v. State*, 575 S.W.2d 42 (Tex.Cr.App.); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.). While there are numerous exceptions to this general rule against the admission of evidence of extraneous offenses, see, e.g., *Albrecht v. State*, supra, we find it unnecessary to consider their applicability to the instant case. Error in the admission of improper testimony is usually cured by the trial court's instruction to the jury to disregard, 'except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.; E.g., *Campos v. State*, 589 S.W.2d 424 (Tex.Cr.App.); *Evans v. State*, 542 S.W.2d 139 (Tex.Cr.App.); *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.). Thus, testimony referring to or implying extraneous offenses allegedly committed by the defendant may be rendered harmless by the trial court's instruction to disregard. *Campos v. State*, supra; *Evans v. State*, supra. Any error resulting from the testimony complained of was rendered harmless by the trial court's action in ultimately sustaining the objection and instructing the jury to disregard. See generally C. McCormick & R. Ray, Texas Law of Evidence, Sec. 29 (3rd ed. 1980)." *Thompson v. State*, 612 S.W.2d 925, at 928 (Tex.Cr.App.1981).

We find that the court's instruction to disregard cured any error accruing from the officer's answer. This ground of error is overruled.

In his sixth ground of error, appellant argues that the trial court erred in admitting into evidence a "pen packet" when the State failed to give notice as required by "Article 3731A of the Code of Criminal Procedure." We would initially point out that this article is not found in the Code of Criminal Procedure but may be found in the annotated civil statutes. See Article 3731a, V.A.C.S.

The record shows that on April 18, 1979, appellant was indicted in Cause No. 294,741 for the instant offense. This indictment also contained an enhancement paragraph alleging a previous conviction in Cause No. 157,137. Defense counsel Bob Tarrant prepared to defend appellant under that indictment. However, on June 1, 1979, appellant was reindicted under a new cause number, Cause No. 296,696. This new indictment substituted a new enhancement paragraph alleging a prior conviction in Cause No. 193,968. Appellant's counsel was unaware of this new indictment. On June 15, 1979, while Bob Tarrant was out of the country, his law partner, Don Ervin, was somehow informed of this new indictment. He was instructed to appear with appellant for arraignment and did so. When Tarrant returned, Ervin neglected to tell him about the new indictment. Thus Tarrant appeared for trial on June 18, 1979, announced ready and tried the guilt-innocence phase of the trial without realizing the existence of the new indictment. Only when he attempted to present a motion to quash the enhancement paragraph alleging the prior conviction in Cause No. 157,137, was he informed that his client had been reindicted with a new enhancement paragraph. Tarrant immediately pled surprise under "Article 3731A of the Code of Criminal Procedure" and moved the trial court to prohibit the State from introducing the pen packet containing evidence of that prior conviction because they had failed to give him the requisite notice. The trial court held that since Tarrant could not tell the court on what basis he was surprised that he would deny Tarrant's motion. He then instructed the State to give Tarrant a copy

of the pen packet and Tarrant was given forty-five minutes to study its contents. The punishment phase of the trial was then held and the pen packet was introduced into evidence over Tarrant's objection.

The pen packet is before us and we find that it contains not only the judgment and sentence from Cause No. 193,968 but also judgments and sentences from Cause Nos. 157,137, 193,969, 193,572 and 193,571.

This Court addressed this same contention in *Gollin v. State*, 554 S.W.2d 683 (Tex.Cr.App.1977):

"Even though a copy of an official record is not delivered to the appellant a reasonable time before trial, the exhibit is nevertheless admissible in the absence of unfair surprise. *Sierra v. State*, 476 S.W.2d 285 (Tex.Cr.App.1971), and cases cited therein. The appellant did not offer any evidence that he was unaware of the prior conviction. As was stated in *Sierra v. State*, supra, 'It is difficult for members of the Court, without evidence to the contrary, to conclude that counsel and appellant did not know that appellant had been previously convicted of a felony offense ...' In the absence of a finding of unfair surprise or evidence establishing the same, no error is shown. *Tatum v. State*, 505 S.W.2d 548 (Tex.Cr.App. 1974)."

The Court further found in *Gollin* that since the prosecutor some seven days before Gollin's trial showed one of Gollin's defense attorneys a copy of Gollin's criminal history record, Gollin was not injured by the failure of the State to give notice under Article 3731a(3). V.A.C.S. that a copy of Gollin's penitentiary records was going to be introduced into evidence.

▮ Article 37.07, Section 3, V.A.C C.P., provides that during the punishment phase of a trial the prior criminal record of the defendant may be introduced into evidence. One of the customary means of introducing that criminal record has been by the use of certified copies of prison records. *Denham v. State*, 428 S.W.2d 814, 816, 817 (Tex.Cr.App.1968), and cases cited therein. Thus, it would seem that in the instant case defense counsel was put on notice that appellant had a prior criminal record by virtue of the fact that the first indictment in Cause No. 294,741 contained an allegation of a final prior conviction and that the State would endeavor to try to introduce appellant's criminal record into evidence. The burden of investigating the extent of appellant's prior criminal record thus fell on the defense attorney.

▮ Having reviewed the particular facts of this case, we are compelled to find that the appellant was not unfairly surprised by the introduction of these records. See also: *Sierra v. State*, 476 S.W.2d 285, 288 (Tex.Cr.App.1971); *Smith v. State*, 439 S.W.2d 834, 835 (Tex.Cr.App.1969).

In his final ground of error, appellant complains that the prosecutor acted in bad faith when he allowed the two identification witnesses to testify that they could *positively* identify appellant when he knew in fact that the witnesses had only made tentative identifications. Appellant further argues that the prosecutor's bad faith combined with his objections to defense counsel's questions concerning the lineup in effect amounted to the withholding of exculpatory evidence. Thus, he argues that the total effect of this prosecutorial misconduct can only be remedied by a new trial. Appellant relies on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) for the proposition that it is reversible error for the prosecution to either actively suppress or inadvertently fail to disclose evidence which might exonerate or be of material value to the accused.

The record shows that after the two identification witnesses had testified that they positively identified appellant after seeing him in the wig and sunglasses, the State rested. The defense then put Detective M.D. Beale on the stand. Beale testified that he conducted the lineup at which the two identification witnesses identified appellant. On direct examination Beale testified that because neither witness could say he was absolutely certain about appellant's identity, Beale noted in his report that the identifications of appellant were "strong

tentative." On cross-examination, Beale testified that although the witnesses told him they were sure about appellant's identity, he himself interpreted their identifications to be "strong tentative."

 In determining whether reversible error has occurred, this Court looks to three factors: (1) the suppression of such evidence by the prosecution after a request by the defense, (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence. *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App.1980). In applying these factors, we find that there was no suppression of evidence by the prosecution.

Initially, we note that there was never a suppression of any material by the prosecution. The court conducted a pretrial hearing on the appellant's motion to suppress the identification testimony. Only the two identification witnesses testified on behalf of the State. The appellant called no witnesses nor requested the State to provide any additional information regarding the lineup. At trial, the State again called the two identification witnesses to the stand. During the presentation of his case, appellant called Detective Beale. There is nothing in the record to even suggest that the prosecutor engaged in any attempts at keeping Detective Beale's impressions of the lineup from the knowledge of appellant.

Furthermore, it is not readily apparent to us how favorable Detective Beale's testimony was to appellant. His testimony, which the jury was allowed to hear, merely reinforced the witnesses' testimony that they told him that they were sure in their identifications of appellant. Detective Beale testified that it was his own interpretation of what the witnesses told him that caused him to note on his report that the identifications were "strong tentative."

There is no need to discuss the third factor, materiality, in that the jury was allowed to hear the evidence. As we have stated many times, the credibility of the witnesses is for the finder of fact to decide. *Minx v. State,* 615 S.W.2d 748

(Tex.Cr.App.1981). We must assume from their verdict that the jury thought that the witnesses' identifications of appellant were sufficient to warrant his conviction for the offense.

In summary, we find that the prosecutor did not act in bad faith and did not attempt to suppress exculpatory evidence. The jury was allowed to hear the evidence which appellant maintains was exculpatory and still voted to convict appellant. We find no error.

The judgment is affirmed.

CLINTON, J., dissents.

TEAGUE, J., concurs in the result.