Larry Hudson, Jr. v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-030-CR

LARRY HUDSON, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Larry Hudson, Jr. appeals from a jury verdict of guilty of aggravated assault and sentence of forty-five years’ confinement with a $10,000 fine.  In two issues, he complains on appeal that the trial court erred in failing to allow into evidence his videotaped interview and in failing to grant a mistrial during the guilt/innocence phase of the trial.  We will affirm.

II.  Background

June 26, 2002 turned out to be an unfortunate day for Arlee Bowers.  Her cousin, Larry Hudson, Jr., was asleep on the sofa in her apartment.  After having previously stayed with her for approximately six weeks, he had been asked to leave by Bowers but he occasionally returned to the apartment for brief periods of time, and Bowers let him stay.  Bowers had entered the living room, turned off the television where Hudson was asleep, and sat down in front of her computer when he approached her from behind, yelling at her.  As she reached for the phone to call the police, he began stabbing her, tried to smother her with a pillow, and began beating her with a chair leg.  After this assault, Hudson left and Bowers locked the door and called 911.  Responding emergency personnel arrived and took her to the hospital by ambulance.  Officer Christine Whisenhunt and Officer Brian Sheehan found Hudson covered in blood, lying in a fetal position in a field next to Bowers’s apartment complex, and upon being discovered, he inquired, “Did I stab her that bad?”  Bowers subsequently identified Hudson as her assailant, and Officer Whisenhunt located a knife in Bowers’s apartment that Bowers described as “Larry’s knife.” 

At the guilt/innocence phrase of Hudson’s trial for aggravated assault, the State called Bowers’s treating physician at the hospital, who described Bowers’s condition and her injuries; Bowers, who described the incident including the identification of Hudson and her injuries; Officers Whisenhunt and Sheehan, who described events following their arrival at the scene of the assault and the discovery of Hudson; Identification Technician Michelle Hanson, who proved up a series of photographs about the crime scene and the knife; and fireman Danny Cook, who described Bowers’s condition upon his arrival at the apartment.  Other than cross-examination, no witnesses were called on behalf of Hudson, who did not testify.  

Following closing argument, the jury retired, deliberated, and convicted Hudson on a single count of aggravated assault.  Immediately thereafter, the punishment phase of the trial began, with Hudson pleading not true to an enhancement paragraph.  The first witness called by the State was Bill Pursley, a retired fingerprint specialist who matched Hudson’s fingerprint with his pen packet for a burglary case from Clay County.  The State also called jailor Stephanie Pugliese, who testified she had seen Hudson attack another prisoner, following which the State rested.  Hudson called three character witnesses on his behalf, and following arguments of counsel, the jury deliberated and returned their verdict of forty-five years’ confinement and a $10,000 fine.  On January 22, 2004, based on the jury’s verdict, the trial court signed its judgment.  This appeal followed.

III.  The Videotape

In his first issue, Hudson complains that the trial court failed to admit into evidence his videotaped interview.

Following the testimony of Ms. Pugliese, Hudson attempted without success to have admitted into evidence a videotape of his interview with police three days after the assault.  Hudson had previously attempted to suppress the videotape at a pretrial conference, and the motion had been denied, but the State never offered the videotape.
(footnote: 2)  The State objected to Hudson’s offer of the videotape “because it’s self-serving as a hearsay statement of the accused.” The objection was sustained. 

Hudson explained his offer of the tape and the reasons for its admissibility as follows:   

It is a statement against penal interest where he is attempting during the course of that statement and describing his knife, describing his activity at the scene, describing—speaking about stabbing and admissions that he made as to his activity and stabbing Bowers . . . . [T]o show the demeanor of the Defendant as close as possible to the time, to show his statements about it to the police as evidence on the issue of intoxication and temporary insanity which has already been raised . . . to have a background . . . . [I]t gives them the flavor and texture of what happened in his—in how he presents himself and I think it will be useful for them in setting punishment. 

The State responded by pointing out that it was Hudson who argued at the Motion to Suppress hearing, that the tape was inadmissible and now wanted to admit the tape and reiterated that the State’s position was that what the defendant wanted was “to get out of taking the stand but have the jury have sympathy and put his story before the jury and that’s why it violates under the rules regarding hearsay and why we object.” 

A review of the videotape indicates that the essence of Hudson’s statement was that he was a diabetic who usually took his insulin, that he had psychological and emotional problems for which he had received treatment in the past but had not taken his medication for some time, that he had been awake for approximately six days prior to the assault and had little or no sleep during that period of time during which he was also taking drugs, that he had no memory of the incident in question other than lying down on the sofa in Bowers’s apartment and then waking up with blood all over him, and that he was not the type of person who would harm anyone intentionally.

On appeal, Hudson acknowledges that the tape is self-serving and asserts that it fits an exception to the general rule prohibiting such statements in that it “explains or contradicts acts or declaration[s] first offered by the State.”
(footnote: 3)  Hudson goes on to argue that “[t]he videotape of [a]ppellant’s statement clearly shows him to be remorseful and concerned.  In other words, the videotape contradicts the factual setup advanced by the State.”  The closest that this argument was presented to the trial court was a statement that the tape was offered “to show the demeanor of the defendant as close as possible to the time.”  However, the argument that the statement fits an exception to the 
Allridge
 requirement was not presented to the trial court in any form that could be perceived as such by the court.  Hence, there is a disconnect between the evidentiary argument offered to the trial court and the argument presented on appeal.  As such, the issue is overruled.  
See 
Tex. R. App. P.
 33.1; 
Wilson v. State
, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

IV.  Mistrial

In his second issue, Hudson urges error by the trial court in not granting his request for a mistrial.  

During the guilt/innocence, the following testimony occurred between the prosecutor and the victim of the assault:  

Q.  Arlee, I believe you stated you were in your apartment - 

A.  Yes.

Q.  - - where this brutal assault occurred was located in Wichita County, State of Texas?

A.  Correct.

Q.  Was in this county and state?  Okay.  In response to one of Mr. - - I just want to clarify a couple of things in response to a couple of Mr. Rasmussen’s questions on cross examination.  He had asked you a question and you said he had been there a few times before with other people.  What were those incidents?

A.  Afterwards I had found out that Larry had been in jail for aggravated assault with someone.  I don’t know who the person was and I also found out afterwards that - -

Mr. Rasmussen:  Your Honor, could we take this up outside the presence of the jury? 

After the jury heard the above recounted testimony, Hudson’s counsel requested a mistrial because of the assault reference.  The trial court denied the request and instructed the jury to disregard Ms. Bowers’s statement concerning Hudson’s previous alleged aggravated assault. 

The denial of a motion for mistrial is reviewed by this court under the abuse of discretion standard.  
Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  Further, as Hudson acknowledges, the denial of a motion for mistrial is not constitutional error but is rather “other error” that is reversible only if it affected the substantial rights of Hudson.  
Tex. R. App. P.
 44.2(b).

It is presumed that the jury will obey an instruction to disregard testimony that should not have been presented to the jury.  
Gardner v. State
, 730 S.W.2d 675, 696 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 905 (1987).  However, when the improper testimony appears to be so clearly calculated to influence the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury’s mind, the foregoing assumption is inapplicable.  
Kemp v. State
, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992), 
cert. denied
, 508 U.S. 918 (1993).  To put it differently, only in an “extreme case” will a trial court’s instructions to a jury to disregard improper testimony not cure the harm. 
 Waldo v. State, 
746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

With respect to the particular improper testimony here, generally an improper reference to an extraneous offense is rendered harmless with an instruction to disregard.  
See Coe v. State
, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984); 
Russell v. State
, 798 S.W.2d 632, 634 (Tex. App.—Fort Worth 1990, no pet.).

We further observe that Hudson’s counsel elicited testimony from Bowers that Hudson had threatened her boyfriend “on occasion” and had been in a few fights before with other people. 

We cannot say that this is an “extreme case” and that the trial court abused its discretion in not granting Hudson a mistrial under these circumstances, and therefore overrule Hudson’s second issue.

V.  Conclusion

Having overruled Hudson’s two issues, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  May 26, 2005

FOOTNOTES
1:
Tex. R. App. P.
 47.4.

2:
The court did require, in the event the State played the videotape, that a copy of the transcript was to be provided to the jury but no transcript exists because it was not played.

3:
While self-serving statements are generally not admissible, one exception to that general rule is when a statement is offered as necessary to explain or to contradict acts or declarations that have first been offered by the state.  
Allridge v. State
, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988), 
cert. denied
, 488 U.S. 1026 (1989).