COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-030-CR
  
  
 LARRY 
HUDSON, JR.                                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 89TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Larry 
Hudson, Jr. appeals from a jury verdict of guilty of aggravated assault and 
sentence of forty-five years’ confinement with a $10,000 fine. In two issues, 
he complains on appeal that the trial court erred in failing to allow into 
evidence his videotaped interview and in failing to grant a mistrial during the 
guilt/innocence phase of the trial. We will affirm.
II. Background
        June 
26, 2002 turned out to be an unfortunate day for Arlee Bowers. Her cousin, Larry 
Hudson, Jr., was asleep on the sofa in her apartment. After having previously 
stayed with her for approximately six weeks, he had been asked to leave by 
Bowers but he occasionally returned to the apartment for brief periods of time, 
and Bowers let him stay. Bowers had entered the living room, turned off the 
television where Hudson was asleep, and sat down in front of her computer when 
he approached her from behind, yelling at her. As she reached for the phone to 
call the police, he began stabbing her, tried to smother her with a pillow, and 
began beating her with a chair leg. After this assault, Hudson left and Bowers 
locked the door and called 911. Responding emergency personnel arrived and took 
her to the hospital by ambulance. Officer Christine Whisenhunt and Officer Brian 
Sheehan found Hudson covered in blood, lying in a fetal position in a field next 
to Bowers’s apartment complex, and upon being discovered, he inquired, “Did 
I stab her that bad?” Bowers subsequently identified Hudson as her assailant, 
and Officer Whisenhunt located a knife in Bowers’s apartment that Bowers 
described as “Larry’s knife.”
        At 
the guilt/innocence phrase of Hudson’s trial for aggravated assault, the State 
called Bowers’s treating physician at the hospital, who described Bowers’s 
condition and her injuries; Bowers, who described the incident including the 
identification of Hudson and her injuries; Officers Whisenhunt and Sheehan, who 
described events following their arrival at the scene of the assault and the 
discovery of Hudson; Identification Technician Michelle Hanson, who proved up a 
series of photographs about the crime scene and the knife; and fireman Danny 
Cook, who described Bowers’s condition upon his arrival at the apartment. 
Other than cross-examination, no witnesses were called on behalf of Hudson, who 
did not testify.
        Following 
closing argument, the jury retired, deliberated, and convicted Hudson on a 
single count of aggravated assault. Immediately thereafter, the punishment phase 
of the trial began, with Hudson pleading not true to an enhancement paragraph. 
The first witness called by the State was Bill Pursley, a retired fingerprint 
specialist who matched Hudson’s fingerprint with his pen packet for a burglary 
case from Clay County. The State also called jailor Stephanie Pugliese, who 
testified she had seen Hudson attack another prisoner, following which the State 
rested. Hudson called three character witnesses on his behalf, and following 
arguments of counsel, the jury deliberated and returned their verdict of 
forty-five years’ confinement and a $10,000 fine. On January 22, 2004, based 
on the jury’s verdict, the trial court signed its judgment. This appeal 
followed.
III. The Videotape
        In 
his first issue, Hudson complains that the trial court failed to admit into 
evidence his videotaped interview.
        Following 
the testimony of Ms. Pugliese, Hudson attempted without success to have admitted 
into evidence a videotape of his interview with police three days after the 
assault. Hudson had previously attempted to suppress the videotape at a pretrial 
conference, and the motion had been denied, but the State never offered the 
videotape.[2]  The State objected to Hudson’s 
offer of the videotape “because it’s self-serving as a hearsay statement of 
the accused.” The objection was sustained.
        Hudson 
explained his offer of the tape and the reasons for its admissibility as 
follows:
   
It is a statement against penal interest where he is attempting during the 
course of that statement and describing his knife, describing his activity at 
the scene, describing—speaking about stabbing and admissions that he made as 
to his activity and stabbing Bowers . . . . [T]o show the demeanor of the 
Defendant as close as possible to the time, to show his statements about it to 
the police as evidence on the issue of intoxication and temporary insanity which 
has already been raised . . . to have a background . . . . [I]t gives them the 
flavor and texture of what happened in his—in how he presents himself and I 
think it will be useful for them in setting punishment.
 
 
The 
State responded by pointing out that it was Hudson who argued at the Motion to 
Suppress hearing, that the tape was inadmissible and now wanted to admit the 
tape and reiterated that the State’s position was that what the defendant 
wanted was “to get out of taking the stand but have the jury have sympathy and 
put his story before the jury and that’s why it violates under the rules 
regarding hearsay and why we object.”
        A 
review of the videotape indicates that the essence of Hudson’s statement was 
that he was a diabetic who usually took his insulin, that he had psychological 
and emotional problems for which he had received treatment in the past but had 
not taken his medication for some time, that he had been awake for approximately 
six days prior to the assault and had little or no sleep during that period of 
time during which he was also taking drugs, that he had no memory of the 
incident in question other than lying down on the sofa in Bowers’s apartment 
and then waking up with blood all over him, and that he was not the type of 
person who would harm anyone intentionally.
        On 
appeal, Hudson acknowledges that the tape is self-serving and asserts that it 
fits an exception to the general rule prohibiting such statements in that it 
“explains or contradicts acts or declaration[s] first offered by the State.”[3]  Hudson goes on to argue that “[t]he videotape of [a]ppellant’s 
statement clearly shows him to be remorseful and concerned. In other words, the 
videotape contradicts the factual setup advanced by the State.”  The 
closest that this argument was presented to the trial court was a statement that 
the tape was offered “to show the demeanor of the defendant as close as 
possible to the time.”  However, the argument that the statement fits an 
exception to the Allridge requirement was not presented to the trial 
court in any form that could be perceived as such by the court.  Hence, 
there is a disconnect between the evidentiary argument offered to the trial 
court and the argument presented on appeal.  As such, the issue is 
overruled.  See Tex. R. App. 
P. 33.1; Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 
2002).
IV. Mistrial
        In 
his second issue, Hudson urges error by the trial court in not granting his 
request for a mistrial.
        During 
the guilt/innocence, the following testimony occurred between the prosecutor and 
the victim of the assault:
   
Q. Arlee, I believe you stated you were in your apartment -
A. 
Yes.
  
Q. 
- - where this brutal assault occurred was located in Wichita County, State of 
Texas?
A. 
Correct.
  
Q. 
Was in this county and state?  Okay.  In response to one of Mr. - - I 
just want to clarify a couple of things in response to a couple of Mr. 
Rasmussen’s questions on cross examination.  He had asked you a question 
and you said he had been there a few times before with other people.  What 
were those incidents?
A. 
Afterwards I had found out that Larry had been in jail for aggravated assault 
with someone.  I don’t know who the person was and I also found out 
afterwards that - -
  
Mr. 
Rasmussen: Your Honor, could we take this up outside the presence of the jury?
 
 
After 
the jury heard the above recounted testimony, Hudson’s counsel requested a 
mistrial because of the assault reference.  The trial court denied the 
request and instructed the jury to disregard Ms. Bowers’s statement concerning 
Hudson’s previous alleged aggravated assault.
        The 
denial of a motion for mistrial is reviewed by this court under the abuse of 
discretion standard.  Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. 
App. 1999), cert. denied, 529 U.S. 1070 (2000).  Further, as Hudson 
acknowledges, the denial of a motion for mistrial is not constitutional error 
but is rather “other error” that is reversible only if it affected the 
substantial rights of Hudson.  Tex. 
R. App. P. 44.2(b).
        It 
is presumed that the jury will obey an instruction to disregard testimony that 
should not have been presented to the jury.  Gardner v. State, 730 
S.W.2d 675, 696 (Tex. Crim. App.), cert. denied, 484 U.S. 905 
(1987).  However, when the improper testimony appears to be so clearly 
calculated to influence the minds of the jury or is of such damning character as 
to suggest it would be impossible to remove the harmful impression from the 
jury’s mind, the foregoing assumption is inapplicable. Kemp v. State, 
846 S.W.2d 289, 308 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 918 
(1993).  To put it differently, only in an “extreme case” will a trial 
court’s instructions to a jury to disregard improper testimony not cure the 
harm.  Waldo v. State, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).
        With 
respect to the particular improper testimony here, generally an improper 
reference to an extraneous offense is rendered harmless with an instruction to 
disregard.  See Coe v. State, 683 S.W.2d 431, 436 (Tex. Crim. App. 
1984); Russell v. State, 798 S.W.2d 632, 634 (Tex. App.—Fort Worth 
1990, no pet.).
        We 
further observe that Hudson’s counsel elicited testimony from Bowers that 
Hudson had threatened her boyfriend “on occasion” and had been in a few 
fights before with other people.
        We 
cannot say that this is an “extreme case” and that the trial court abused 
its discretion in not granting Hudson a mistrial under these circumstances, and 
therefore overrule Hudson’s second issue.
V. Conclusion
        Having 
overruled Hudson’s two issues, we affirm the judgment of the trial court.
  
  
                                                                  PER 
CURIAM
 
 
 
PANEL 
F:   MCCOY, LIVINGSTON, and DAUPHINOT, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
May 26, 2005


NOTES
1.  
Tex. R. App. P. 47.4.
2.  
The court did require, in the event the State played the videotape, that a copy 
of the transcript was to be provided to the jury but no transcript exists 
because it was not played.
3.  
While self-serving statements are generally not admissible, one exception to 
that general rule is when a statement is offered as necessary to explain or to 
contradict acts or declarations that have first been offered by the state.  
Allridge v. State, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988), cert. 
denied, 488 U.S. 1026 (1989).