

## NUMBER 13-10-00556-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

GEOFFREY TYLER WOOD,                                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                               **Appellee.**

### On appeal from the 359th District Court
### of Montgomery County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

Appellant Geoffrey Tyler Wood ("Wood") appeals his conviction of two counts of aggregate theft, both first-degree felonies. *See* TEX. PENAL CODE ANN. §§ 31.03, 31.09 (West 2011). For each respective count, the trial court sentenced Wood to twenty-five years' imprisonment with the Texas Department of Criminal Justice—Institutional Division, assessed a fine of $10,000 for each count, and ordered that the sentences run

consecutively. By five issues, Wood asserts that: (1) the trial court erred when it admitted certain evidence at trial in violation of the U.S. Constitution's Confrontation Clause; (2) the trial court abused its discretion by admitting other evidence over Wood's objections; (3) the prosecutor's conduct during the guilt-innocence phase of his trial deprived him of his right to a fair trial; (4) he was not given a fair punishment hearing; and (5) the trial court improperly cumulated Wood's sentences. We affirm as modified.

## I.     BACKGROUND[1]

A Montgomery County grand jury indicted Wood on two counts of aggregate theft. *See id.* §§ 31.03, 31.09. On the first count, the State alleged that Wood unlawfully appropriated U.S. currency; on the second count, the State alleged that Wood unlawfully appropriated twelve motor vehicles. Because the aggregated values alleged for each count were valued at $200,000 or more, each count constituted a first-degree felony. *See id.* § 31.03(7) (West Supp. 2011). Wood pleaded not guilty to both counts, and the following relevant evidence was presented at trial.

Wood and his father, Stephen "Craig" Wood ("Craig"), owned a car dealership in Conroe, Texas called American Classic Cars, which specialized in the sale of antique, collector's-item cars. Part of the dealership's business was to sell consigned vehicles on behalf of the titled owners and take a commission from the sales. Another part of the business was to repair and restore automobiles to vintage quality.

Detective Greg Grasshoff, of the Conroe Police Auto Theft Task Force, opened an investigation on Wood and his father after he received several complaints from

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

individuals around the world[2] who felt that they were "getting a runaround" from Wood and others at his dealership. The State's seventeen complaining witnesses[3] who testified at trial fell into three general categories of customers, or a combination of the following:

(1) those who paid for vehicles at American Classic Cars and did not receive possession or title to the automobile or both;

(2) those who brought a vehicle to American Classic Cars for repair or restoration, paid the dealership, but never received the repairs or restoration work that was bargained for; or

(3) those who consigned their vehicles with American Classic Cars but either did not receive payment for their sold vehicle or received less money than was contracted for under the consignment contract.

Each witness testified to varying amounts of money lost from each of their respective transactions with Wood and American Classic Cars. The amounts lost ranged from a few thousand dollars to $78,000. Additionally, thousands of pages of exhibits, including emails, business records, and photographs, were admitted into evidence, despite numerous objections by Wood's attorneys at trial.

After two days of deliberation, the jury unanimously found Wood guilty on both counts of aggregate theft and assessed punishment at twenty-five years' imprisonment for each count, including a $10,000 fine for each count. Over Wood's objection, the trial court ordered that his sentences run consecutively. This appeal followed.

## II.    CONFRONTATION CLAUSE

In his first issue, Wood argues that his federal constitutional rights under the Sixth

---

[2] According to Detective Grasshoff, a total of fifty complaints were made about American Classic Cars coming from individuals who resided in the United States, Sweden, Norway, Latvia, Australia, New Zealand, and Saudi Arabia.

[3] Some of the named complainants in Wood's indictment did not testify at trial; however, some of the State's witnesses who testified at trial were not named complainants.

Amendment, *see* U.S. CONST. amend. VI, were violated when the trial court admitted documents containing testimonial statements by individuals who did not appear to testify and whom Wood had no opportunity to cross-examine.

## A. Applicable Law and Standard of Review

The Confrontation Clause guarantees the right of an accused "to be confronted with the witnesses against him." *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (en banc). This right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. *Id.* (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). The primary interest protected under the Confrontation Clause is the right of cross-examination. *See Shelby*, 819 S.W.2d at 546 (citing *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). Therefore, a testimonial hearsay statement may be admitted by the trial court in evidence against a defendant—consistent with the Confrontation Clause guarantee—"'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.'" *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (quoting *Crawford v. Washington*, 541 U.S. 36, 59 (2004)).

Under this framework, the primary focus in determining whether a hearsay statement is "testimonial" is based upon the objective purpose of the interview or interrogation, not upon the declarant's expectations. *See De La Paz*, 273 S.W.3d at 680. "Testimony" has been defined typically as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (noting the distinction that an accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an

4

acquaintance does not.").   A variety of testimonial statements have been recognized by the U.S. Supreme Court including: *ex parte* in-court testimony or functional equivalents such as affidavits, custodial statements, prior examinations that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially.   *Id.*   Extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial have also been recognized as "testimonial" statements for purposes of the Confrontation Clause.   *Id.* at 52.   Furthermore, the U.S. Supreme Court noted in *Davis v. Washington*, that most American cases that apply the Confrontation Clause involved formal statements, such as sworn testimony in a prior judicial proceeding or formal depositions under oath.   547 U.S. 813, 825 (2006).   However, English cases "that were the progenitors of the Confrontation Clause" did not limit exclusion to prior court testimony or formal depositions.[4]   *Id.*   The determination of whether a statement is testimonial is a question of law that we review de novo.   *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).   If the trial court constitutionally erred, we must then evaluate for harm under Texas Rule of Appellate Procedure 44.2(a).

## B.   Discussion

Wood first complains that State's Exhibit 46G, a memorandum regarding a conversation between Wood and customer Mike Turocy, and Exhibit 46H, a written

---

[4] The U.S. Supreme Court noted that the American Confrontation-Clause case law "invites the argument that the scope of the Clause is limited to that very formal category."   *Davis v. Washington*, 547 U.S. 813, 826 (2006).

response to the Better Business Bureau about Turocy's complaints to the Better Business Bureau, violated his Sixth Amendment right to confrontation. We disagree. Exhibit 46G is non-testimonial because it is a document prepared by Wood himself. The scope of the Confrontation Clause requires the ability to cross-examine a witness *against* the accused who bears testimony. *See Crawford*, 541 U.S. at 51. Exhibit 46H on the other hand, appears to be testimonial. The substance of Turocy's complaints made to the Better Business Bureau relate to a complaint filed with an organization that serves as a liaison between consumers and businesses. These allegations do not rise to the same type of formal-process out-of-court testimony recognized by *Crawford* and *Davis* that fall under the scope of the Confrontation Clause. *See id.* at 51–52; *Davis*, 547 U.S. at 825.

Next, Wood argues that the trial court erred by admitting State's Exhibits 27B (emails from customer Goran Thorberg to American Classic Cars email address concerning the sale of an automobile) and 27G (a faxed explanation to Thorberg purportedly written and signed by Craig in Wood's name explaining what happened to the sale) because the documents violated his right to confrontation. We are not persuaded. These email and fax exchanges were non-testimonial, and related to business communications between Thorberg, a customer, and American Classic Cars. *See id.*

Wood also contends that State's Exhibit 2O, an email conversation between Craig, as representative of American Classic Cars, and customer Gerard Camus, violated his right to confrontation. Again, we disagree. This exhibit does not meet the

6

*Davis* testimonial standard because it involves an email communication about a particular transaction and the details surrounding it, not an interview or interrogation.

Wood next objects to a series of demand letters[5] sent by various aggrieved American Classic Cars customers, that were addressed to either Wood, his father Craig, or both of them. All of the customers who sent these demand letters were named in the State's indictment against Wood, but did not testify at trial. Wood contends that these letters were admitted in violation of the confrontation clause. The State introduced Exhibit 12J, 5F, 14F, and 6M to establish that Wood was on notice of the customer dissatisfaction from their dealings with American Classic Cars. Like Exhibit 2O, these exhibits are pieces of correspondence exchanged by customers to Wood, his father, or the business in general. We are not persuaded that these letters rise to the level of a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" to make them testimonial and subject to the Confrontation Clause. *See Crawford*, 541 U.S. at 51

Wood also objects to a "packet of emails" between customer Patrick Eskew and Craig, as representative of American Classic Cars, which was also admitted over Wood's Confrontation-Clause objection.[6] Eskew was named in the State's indictment against Wood but did not testify at trial. These emails involved a conversation between Eskew and Craig over the purchase of a Ferrari automobile. Wood argues that the trial court erred by admitting these emails because Eskew threatened to bring criminal charges against Craig. Instead, like the demand letters, Eskew's emails certainly

---

[5] Specifically, Wood objected to State's Exhibits 12J, 5F, 14F and 6M.

[6] Wood appears to have misidentified this exhibit as State's Exhibit 8D in his brief. The actual exhibit involved is State's Exhibit 18D.

related to possible civil litigation exposure against American Classic Cars and merely threatened filing criminal charges against Craig, not the type of "solemn declaration or affirmation" to become testimonial and within the scope of the Confrontation Clause. *Id.*

Finally, Wood contends that emails between the attorney for American Classic Cars customer, John Kloss, Lewis Jost, and Craig were admitted as State's Exhibit 24K over Wood's confrontation objections. Kloss was not named in the State's indictment against Wood and was deceased at the time of trial. The emails, like the others, involve a demand for payment by American Classic Cars to Kloss pursuant to Kloss's consignment agreement with the dealership. We conclude that the primary purpose behind these emails was for Kloss to receive his payment under the consignment agreement with American Classic Cars and not testimonial in nature. *See id.*

Wood's first issue is overruled.

## III.    ADMISSION OF EVIDENCE

By his second issue, Wood complains that the trial court abused its discretion by admitting certain evidence that was either irrelevant, or if relevant, more prejudicial than probative, and this abuse of discretion deprived Wood of a fair trial.

## A.    Applicable Law and Standard of Review

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Generally, all relevant evidence is admissible, but may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative

8

evidence.  TEX. R. EVID. 402, 403.

A trial judge has broad discretion in admitting or excluding evidence.  *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999).  The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion.  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  So long as the trial court's ruling is within the zone of reasonable disagreement, we shall affirm.  *See id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc)).

However, the reviewing court cannot simply conclude that the trial court conducted a balancing test and did not rule arbitrarily or capriciously.  *See Mozon*, 991 at 847.  Instead, we must look at the proponent's need for the evidence in addition to determining the relevance of the evidence, and whether the prejudice of this evidence outweighs its probative value.  *Id.* (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (en banc)).

**B.    Discussion**

Wood argues that the trial court abused its discretion by admitting: (1) State's Exhibits 25F and 25G, his and Craig's booking photos; (2) State's Exhibit 25LLL, Wood's resume that included false assertions; (3) State's Exhibits 45A, 59, and 61, documents related to a company named American Coordinators, Inc.; and (4) State's Exhibits 51–54 and 67–68, Wood's recorded jail telephone conversations and corresponding transcripts. We will address each argument in turn.

First, we disagree with Wood's argument that the booking photos were irrelevant and thus, the trial court abused its discretion by admitting them.  The State had the

9

burden of identifying Wood and Craig as the actors to the transactions detailed in its case-in-chief. These photos aided the prosecution in properly identifying and distinguishing Wood from his father and are thus relevant under rule of evidence 401. We are also not persuaded by Wood's argument that showing the jury his booking photo was "substantially equivalent" to having to stand trial in jail clothing. The photograph only reveals that Wood was booked by police prior to his criminal trial. *See Hajjar v. State*, 176 S.W.3d 554, 561–62 (Tex. App.—Houston [1st Dist.], pet. ref'd) (noting that "as a juror in a criminal trial, one already knows that the defendant has gone through the process of being booked and charged with a crime").

Next, Wood argues that the trial court abused its discretion by admitting State's Exhibit 25LLL over his authentication and hearsay objections. We disagree. As a general rule, authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *See* TEX. R. EVID. 901(a). Here, Detective Grasshoff testified that Exhibit 25LLL was a document—specifically, a copy of Wood's resume—that he recovered at American Classic Cars dealership during his investigation. The trial court was within its discretion and the zone of reasonable disagreement to admit this evidence over Wood's hearsay objection in favor of the State's argument that the resume consisted of an admission by a party opponent, i.e. that Wood prepared his own resume.[7] *See* TEX. R. EVID. 801(e)(2) (hearsay exception for admission by a party opponent).

With regard to State's Exhibits 45A, 59, and 61, Wood argues that they were

---

[7] The veracity of certain portions of Wood's resume was put into question at trial.

10

improperly admitted over his objections of relevance, hearsay, and confrontation. We agree with Wood that these exhibits were irrelevant to the proceedings and should have been excluded. The exhibits in question include a business plan (exhibit 61) and official documents from the Texas Department of Transportation (exhibit 45A) and the Texas Secretary of State's office (exhibit 59) regarding a separate business entity named American Coordinators, Inc., which lists Wood as an owner in the company. We fail to see how these documents had any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. The State's charges against Wood related to his actions as owner of American Classic Cars, not of American Coordinators, Inc. Because the trial court's ruling fell outside the zone of reasonable disagreement, we conclude that it abused its discretion in admitting State's Exhibits 45A, 59, and 61. *See Moses*, 105 S.W.3d at 627. However, despite the trial court's abuse of discretion, Wood fails to show how these admissions affected his substantial rights, other than to argue that they linked him to his father's "questionable business ventures" and to further undermine his character before the jury. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial or injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In light of our review of the record, we conclude that the trial court's error by admitting these exhibits was harmless. The documents involving American Coordinators, Inc., while erroneously admitted, did not necessarily link Wood to his father's "questionable business ventures" as he contends. The evidence related to American Classic Cars established Wood and his father's business relationship.

11

Further, Wood failed to show how public-record documents that listed Wood as an owner of an irrelevant company, and nothing more, undermined his character before the jury. We conclude that the trial court's error was harmless.

Finally, Wood argues that State's Exhibits 51–54 and 67–68 were improperly admitted by the trial court under rules of evidence 403 and 404(b).[8] We disagree. The trial court did not abuse its discretion in admitting this evidence as it aided the State in its rebuttal of Wood's defense that he had no involvement or knowledge of the dealership's transactions. *See Mozon*, 991 at 847. Wood's only argument regarding this evidence's prejudicial effect was that the trial court allowed the jury to hear the recordings of the calls. According to the summaries, Wood discusses a variety of topics with his wife and mother from jail including: (1) how enlisting in the U.S. military would help get his pending charges dismissed; (2) how he was forced to do what Craig told him to do and was a victim; and (3) that his prosecution was politically-motivated. Our review of the record shows that the trial court was within the zone of reasonable disagreement to find that the probative value of Wood's jail telephone call recordings and summaries were not substantially outweighed by the danger of unfair prejudice, if any. *See Santellan*, 939 S.W.2d at 169.

Next, under rule of evidence 404(b), evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). To constitute an extraneous offense under rule 404, the evidence must show a crime or bad act, and that the defendant was connected to it.

---

[8] Exhibits 51-54 and 68 are the compact disc recordings of Wood's jail-telephone conversations. The record before us did not contain the actual discs, but only photocopies of the discs. Exhibit 67 is entitled "phone call summary," which is a summarized transcript of Wood's recorded jail-telephone conversations from June, July, and August 2010.

12

*See Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992) (en banc). Here, Wood's recorded jailhouse phone calls do not tend to connect him to any prior bad acts or crimes that he may have committed. Instead, they were statements made by Wood related to the present offense. *See id.* Accordingly, the trial court did not abuse its discretion for admitting these exhibits.

We overrule Wood's second issue.

## IV. PROSECUTOR'S CONDUCT DURING GUILT-INNOCENCE PHASE

By his third issue, Wood argues that the cumulative effect of the prosecutor's "egregious conduct" during the guilt-innocence phase of his trial deprived him of his right to a fair trial.

### A. Applicable Law and Standard of Review

"Prosecutorial misconduct may 'so infect the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 766 (1987) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Clark v. State*, 365 S.W.3d 333, 338 (Tex. Crim. App. 2012). To constitute a due-process violation, the prosecutorial conduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. *Greer*, 483 U.S. at 766.

### B. Discussion

Wood argues that the prosecutor improperly: (1) referred to Wood as a "piece of crap" during closing arguments; (2) broached the subject of John Kloss's suicide, after both parties agreed not to mention it; and (3) "put on a show for the jury by prancing around the courtroom while glaring at [Wood]." The State argues that Wood did not

13

properly preserve any of these arguments for appeal. We agree, in part, and disagree, in part.

In order for a party to preserve error for review, the record must show that the objection "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). If an objection made at trial differs from a complaint made on appeal, a defendant has not preserved any error for review. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986) (en banc). Even constitutional errors may be waived by failure to object at trial. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (en banc). In determining whether a complaint made on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time. *Clark*, 365 S.W.3d at 339.

Here, Wood's counsel failed to object at trial to the prosecutor calling him a "piece of crap" during closing arguments, as well as the mention of Kloss's suicide during the State's questioning of Detective Grasshoff. Accordingly, those specific complaints are waived. *See id.*

Wood objected twice to the prosecutor's conduct during the State's questioning of two different witnesses. The first relevant exchange took place outside the presence of the jury:

[DEFENSE COUNSEL]: Your honor, I would like the record to reflect that [the State's prosecutor] was questioning the witness directly in front of the jury. And while questioning the witness, he walked up to Mr. Wood, gestured to Mr. Wood while still questioning the witness, over objection.

14

It's an inappropriate way to question a witness, and it's an inappropriate gesture towards the Defendant in a courtroom. It's inappropriate in the state of Texas, and he knows better and he's doing it anyway.

THE COURT: What was the gesture?

[DEFENSE COUNSEL]: He stood here (indicating) facing Mr. Wood, looking at the jury, with his hands out, while questioning the witness. Judge, that's not appropriate. That is not an appropriate posture in which to question a witness.

. . . .

THE COURT: Your objection is overruled. I'll note your exception.

The next relevant exchange took place during the State's re-examination of Detective Grasshoff:

[STATE]: Does [sic] any of those people walk away from this being satisfied or happy after dealing with that guy (indicating Defendant)?

GRASSHOFF: No, sir.

[DEFENSE COUNSEL]: Objection, Your Honor. Let the record reflect that once again, [the Prosecutor] is standing by our client while he's questioning the witness, pointing his finger in our client's face. Your Honor, it's completely inappropriate and he's done it about ten times now.

THE COURT: Thank you, [counsel]. I appreciate your help, sir.

DEFENSE: We move for a mistrial, Judge.

. . . .

THE COURT: Denied.

15

In both of these instances, Wood properly preserved error to assert a due process violation. We do not agree, however, that the prosecutor's conduct deprived him of a fair trial. From our review, the prosecutor's gestures appeared to be a demonstrative action to identify the defendant during examination of witnesses. This conduct was not the kind that so infected the trial with unfairness, or so significant that it deprived Wood of a fair trial. *See Greer*, 483 U.S. at 766; *Clark*, 365 S.W.3d at 339.

Wood's third issue is overruled.

## V. PUNISHMENT PHASE

By his fourth issue, Wood argues that the prosecutor made improper jury arguments during the punishment phase of his trial and that he was thereby deprived of a fair punishment hearing.

### A. Applicable Law and Standard of Review

Proper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Young v. State*, No. 09-10-00398-CR, 2012 WL 1664208, *4 (Tex. App.—Beaumont May 9, 2012, no pet.).

It is well-settled that in order to preserve jury-argument error for appellate review, the defendant must: (1) make an objection; (2) request an instruction to disregard; and (3) make a motion for mistrial. *See Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993) (en banc) (citing *Coe v. State*, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984)). Without exception, any failure to object to an improper jury argument or failure to pursue

16

an adverse ruling to an objection to a jury argument forfeits a defendant's right to complain about the argument on appeal. *See Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (noting that a prior exception to this rule was overruled by *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)).

## B. Discussion

Wood admits in his brief that his trial counsel "did not object to any of the prosecutor's closing arguments." As a result, the issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1. Wood's fourth issue is overruled.

## VI. TRIAL COURT'S SENTENCE

By his final issue, Wood asserts that the trial court improperly cumulated his sentences.

## A. Applicable Law and Standard of Review

By statute, the trial court has the discretion to order sentences for a defendant who has been convicted in two or more cases to: (1) run concurrently, or (2) cumulate, or "stack,"[9] the second and subsequent sentences—that is, begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2011).

We review a trial court's decision under article 42.08(a) for an abuse of discretion. *See Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). A trial court abuses its discretion when it imposes a sentence that is not in compliance with the law. *See id.*; TEX. PENAL CODE ANN. § 3.03 (West Supp. 2011) (requiring concurrent sentences when a defendant is found guilty of more than one

---

[9] In this context, the legal term "cumulate" and the colloquial term "stack" are indistinguishable, and we use the two terms interchangeably.

17

offense arising out of the same criminal episode prosecuted in a single criminal action); *id.* § 42.08(b) (mandating consecutive sentences where an inmate is convicted of an offense and has not completed the sentence he is serving); *Nicholas*, 56 S.W.3d at 765 (recognizing other cases in which the trial court fails to observe statutory requirements pertaining to sentencing). In other words, so long as the law authorizes cumulative sentences, the trial court acts within its discretion when it stacks sentences.

## B. Discussion

Wood argues that his offenses were alleged to have been committed in a "common scheme" and as part of the same criminal transaction. As a result, Wood asserts that penal code section 3.03 required his sentences to run concurrently because his offenses arose out of the same criminal episode and were prosecuted in a single criminal action. *See* TEX. PENAL CODE ANN. § 3.03. A "criminal episode" is defined as:

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1)  The offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2)  The offenses are the repeated commission of the same or similar offenses.

*id.* § 3.01 (West 2011). A defendant is prosecuted in a "single criminal action" when allegations and evidence of more than one offense arising out of the same criminal episode are presented in a single trial or plea proceedings." *Ex parte Pharr*, 897 S.W.2d 795, 796 (Tex. Crim. App. 1995) (en banc).

The State charged Wood with two counts of aggregate theft and each respective count was alleged to have occurred "pursuant to one scheme or continuing course of

18

conduct which began on or about October 1, 2007 and continuing through on or about August 31, 2008." At Wood's motion for new trial hearing, the trial court expressed the difficulty it experienced in determining whether both counts in this case related to the same criminal episode. In the end, the trial court concluded that the theft of money (count one) and the theft of automobiles (count two) were not the same criminal episode and that the State successfully kept both counts separate and distinct. We disagree.

The State's case involved seventeen complaining witnesses and hefty volumes of exhibits that implicated Wood, and the evidence shows that both counts grew out of the same criminal episode. Put another way, the record does not show that each count was dealt with separately. Instead, the record shows that two cases—aggregate theft of currency and aggregate theft of automobiles—were considered together, and the offenses were prosecuted in a single criminal action. *See Green v. State*, 242 S.W.3d 215, 220 (Tex. App.—Beaumont 2007, no pet.) (citing *Polanco v. State*, 914 S.W.2d 269, 271 (Tex. App.—Beaumont 1996, pet. ref'd). Therefore, because Wood's convictions met the requirements set forth in section 3.03, the trial court abused its discretion in cumulating Wood's sentences.

An unlawful cumulation order is remedied by reforming the judgment to set aside the order. *See Beedy v. State*, 250 S.W.3d 107, 113 (Tex. Crim. App. 2008) (noting that this remedy is "reinforced" by the Court's interest in fostering judicial economy and conserving scarce judicial resources). Accordingly, we modify the judgment to delete the cumulation order. *See id.*; *Robbins v. State*, 914 S.W.2d 582, 584 (Tex. Crim. App. 1996).

Wood's fifth issue is sustained.

## VII. CONCLUSION

We modify the trial court's judgment to delete the portion requiring count two of Wood's conviction to begin after the term of count one is completed, and decree that count one and count two run concurrently. We affirm the trial court's judgment as modified.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
31st day of January, 2013.