**Opinion issued April 9, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00094-CR

————————————

**RICHARD ANDREW WETMORE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 13th District Court
Navarro County, Texas
Trial Court Case No. 33239CR

## MEMORANDUM OPINION

A jury found appellant, Richard Andrew Wetmore, guilty of the offense of

possession with intent to deliver methamphetamine weighing more than four grams

but less than two hundred grams,[1] and the trial court assessed his punishment at confinement for forty years.[2] In three issues, appellant contends that the trial erred in denying his motion to suppress evidence, denying his motion for mistrial, and admitting evidence of extraneous offenses.

We affirm.

## Background

At a pretrial hearing on appellant's motion to suppress evidence, Navarro County Sheriff's Office ("NCSO") Sergeant C. Andrews testified that on July 23, 2010, he noticed appellant driving a car with an expired registration sticker. Andrews, who was in an unmarked patrol car, requested assistance from a deputy in a marked car, but appellant pulled his car over before any other deputies arrived. Appellant crossed an oncoming lane of traffic and parked his car on the wrong side of the street. He then walked towards the front door of a house, but Andrews stopped him, informed him that his registration sticker was expired, and instructed him to move back towards his car. Andrews noted that appellant seemed

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(5), 481.102(6), 481.112(a), (d) (Vernon 2010).

[2] This appeal, originally filed in the Tenth Court of Appeals, Waco, Texas, was transferred to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013).

"extremely nervous and fidgety," as if he had "something to hide," and was known to have "fled from peace officers in the past."

Sergeant Andrews asked appellant if he "had any narcotics, weapons, or anything illegal inside the vehicle," and appellant admitted to having in the car marijuana wrapped with black electrical tape. Andrews looked inside the car and noticed a package wrapped in black electrical tape. Several other deputies then arrived at the scene, including one with a narcotics-detection dog. At some point after Andrews had pointed out the marijuana, the deputies handcuffed appellant and placed him in the back of a patrol car. The narcotics-detection dog "alerted to the presence or the odor of narcotics," and Andrews proceeded to search appellant's car. On the driver's side floorboard, he found a "camera case" containing "approximately 10 grams" of methamphetamine, "numerous small, plastic baggies commonly used to distribute" methamphetamine, a methamphetamine pipe, a set of digital scales, and a "switch blade knife." Andrews ultimately arrested appellant for possession of marijuana and possession of methamphetamine with intent to deliver.

On cross-examination, Sergeant Andrews admitted that he had known that appellant's registration sticker was expired from "past narcotics investigations." He explained that he called for a marked patrol car because "unmarked units" are typically not authorized to initiate traffic stops. And Andrews clarified that

3

appellant was handcuffed for "[e]xpired registration and investigation for possession of – into marijuana." He noted that appellant's car was registered to a man named "Ronny Bearden."

NCSO Lieutenant M. Steward testified that on July 23, 2010, he received a dispatch call from Sergeant Andrews requesting a "backup unit." When Steward arrived at the scene, he heard Andrews ask appellant whether anything illegal was in his car, and he saw appellant point towards the marijuana. Steward noted that Andrews was "trying to get consent to look in [appellant's] car." He believed appellant to be "detained" while Andrews was questioning him, but noted that appellant was not handcuffed until other deputies began searching the car.

Texas Department of Public Safety Trooper R. Etzler testified that on July 23, 2010, he received a dispatch to bring a narcotics-detection dog to the scene. When Etzler arrived, appellant had already been placed in the back of a patrol car. Etzler's dog gave an "alert" near "the forward section [of the car] between the fender and the driver's door," and Etzler informed Sergeant Andrews that the dog had alerted to "the presence of narcotics in the vehicle." On cross-examination, Etzler explained that he believed that appellant was detained because the officers "believed him to have narcotics."

NCSO Deputy F. Wafer testified that on July 23, 2010, she responded to Sergeant Andrews' request for a marked patrol car. When she arrived at the scene,

Andrews asked her to put appellant in the back of her patrol car, although she did not know why appellant was being detained.

At the end of the hearing, appellant challenged the initial traffic stop and detention and the search of his car, and the trial court denied appellant's motion to suppress.

At trial, Sergeant Andrews testified to the same facts elicited in the hearing on appellant's motion to suppress. He further testified that appellant was placed under arrest and booked at a police station, where Andrews drafted a "booking sheet" of "identifying" information of appellant, including information that he was unemployed. The State introduced the booking sheet into evidence over appellant's objection. Andrews later weighed the methamphetamine recovered from appellant's car at 10.05 or 10 grams, and he explained that the quantity was consistent with appellant being a "dealer."

**Motion to Suppress**

In his first issue, appellant argues that the trial court erred in denying his motion to suppress the evidence discovered during the search of his car because he "was at all relevant times detained and arrested outside the subject vehicle" and "no exigent circumstances existed which justified a warrantless search."

We review a ruling on a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We

give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the sole and exclusive trier of fact and judge of the witness's credibility. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless a trial court abuses its discretion in making a finding not supported by the record, we will defer to the trial court's fact findings and not disturb the findings on appeal. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution protect against unreasonable searches and seizures.[3] *Atkins v. State*, 882 S.W.2d 910, 912 (Tex. App.—Houston [1st Dist.]

---

[3] When an appellant does not separately brief state and federal constitutional claims, we assume that he claims no greater protection under the state constitution than that provided by the federal constitution. *See Reed v. State*, 308 S.W.3d 417, 419 n.3 (Tex. App.—Fort Worth 2010, no pet.); *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, we will analyze appellant's claims under the Fourth Amendment of the United States Constitution, following guidelines set by the United States Supreme Court in interpreting the Fourth Amendment. *See State v. Guzman,* 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

1994, pet. ref'd). Warrantless searches are per se unreasonable unless the State can prove that the search was conducted pursuant to a recognized exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)).

Under the "automobile exception" to the warrant requirement, the United States Supreme Court has recently reiterated that if there is "probable cause to believe a vehicle contains evidence of criminal activity," police officers are justified in searching "any area of the vehicle in which the evidence may be found." *Gant*, 556 U.S. at 347, 129 S. Ct. at 1721. A totality of the circumstances analysis controls whether probable cause to search without a warrant exists. *See Neal*, 256 S.W.3d at 282–83; *Whaley v. State*, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985). However, in regard to a search of a car incident to arrest, police officers may search the car "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351, 129 S. Ct. at 1723–24; *Moskey v. State*, 333 S.W.3d 696, 702 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Appellant asserts that he was "in police custody before and during the search," his car was outside of his control, and "there was no chance whatsoever that the vehicle could be removed without law enforcement consent." He argues

that because there were no "exigent circumstances," the deputies were required to obtain a warrant to search his car. However, even if appellant was detained at the time of the search, Sergeant Andrews testified that appellant was not handcuffed until "after he pointed out that there was marijuana inside the vehicle." Appellant told Andrews that the marijuana was wrapped in black electrical tape, and Andrews saw a package wrapped in black electrical tape on top of the central console of the car. Andrews noted that although he stopped appellant because of his expired registration sticker, appellant was arrested for possession of marijuana. And a narcotics-detection dog alerted to the presence of narcotics inside the car. Because appellant was initially arrested for possession of marijuana, the deputies could search his car incident to arrest if it was reasonable to believe that the car contained marijuana. *See Gant*, 556 U.S. at 351, 129 S. Ct. at 1723–24; *Moskey*, 333 S.W.3d at 702. And based on the above evidence, it was reasonable for the officers to believe that appellant's car contained marijuana.

In support of his argument, appellant relies on *Stoddard v. State*, 475 S.W.2d 744 (Tex. Crim. App. 1972). In *Stoddard*, police officers discovered narcotics during a search of the defendant's office. *Id.* at 746. The officers requested permission to search the defendant's car at the time of arrest, but when their request was refused, they transported the defendant to a police station and obtained a warrant to search the car. *Id.* The court held that the search warrant was

8

defective and then analyzed the search under the "automobile exception" to the warrant requirement. *Id.* at 749–52. The court noted that the defendant was arrested inside his office and transported away from the car, and the officers did not search the car until several hours after the defendant had been taken to the police station. *Id.* at 750–51. Under these circumstances, the court held that the officer could not rely on the automobile exception to authorize the search. *Id.* at 751–52.

Here, unlike in *Stoddard* where the search was clearly not "incident to arrest," appellant had been driving his car immediately before he was approached by Sergeant Andrews. He arrested appellant just outside of his car, not far away and inside of a building. And the search of appellant's car began, with the narcotics-detection dog, approximately twenty minutes after his arrest. Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress the evidence obtained from the search of his car.

We overrule appellant's first issue.

## Motion for Mistrial

In his second issue, appellant argues that the trial court erred in not granting a mistrial because the State violated the terms of the trial court's pre-trial orders on his motion in limine and he was "unfairly prejudiced" by the violation.

9

A mistrial is an extreme remedy for prejudicial events that occur at trial, and it should be exceedingly uncommon. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 337 (Tex. Crim. App. 2007). A mistrial is required only when the impropriety is clearly calculated to inflame the minds of the jurors and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury that should have been excluded, the trial should continue if possible. *Bauder*, 921 S.W.2d at 698.

Where the trial court sustains an objection to evidence and instructs the jury to disregard it but denies a motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). In determining whether the trial court abused its discretion, we balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Id.* at 75. Only in extreme circumstances, where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression

10

produced on the jurors' minds, will a mistrial be required. *Kelley v. State*, 677

S.W.2d 34, 36 (Tex. Crim. App. 1984).

Before trial, appellant filed a "Request for Extraneous Offenses and Motion

in Limine." In part, the request included,

2.     [Appellant] moves to exclude all extraneous crime or misconduct evidence, which is not alleged in the indictment, unless it can be shown by sufficient proof that [he] perpetrated such conduct, that this evidence is relevant to a material issue in the case, other than character conformity, and that its probative value outweighs its potential for prejudice.

3.     [Appellant] also moves to exclude all extraneous crime or misconduct evidence, notice of which was requested by [him], but not provided by the state as required by Rules 404(b) and 609(f) of the Texas Rules of Evidence, and Art. 37.07(g) of the Texas Code of Criminal Procedure. Alternatively, any purported acts would not be admissible under Texas Rules of Evidence 403, 404(a), (1), (b), or 608.

Although not noted in the request, both appellant and the State, in their briefing,

assert that these were agreed to and granted by the trial court.

At trial, appellant objected to the following testimony from Lieutenant

Steward:

[COUNSEL]:      At any point while you were there, did Detective Andrews indicate to you why he was speaking with [appellant] in the first place?

[STEWARD]:      Yes.

[COUNSEL]:      And why was he there?

[STEWARD]: Yeah, he said he had some violations of his registration on his vehicle, and he also had some narcotics tips on the subject.

Appellant objected to the testimony as introducing an extraneous offense which was not disclosed to him before trial. The State asserted that it was not its "intention to illicit any testimony about narcotics related tips" and agreed that the testimony was "hearsay" and "probably more prejudicial than probative." Appellant moved for a mistrial, but the trial court denied the motion and instructed the jury to disregard Lieutenant Steward's statement.

Regarding the severity of the misconduct, Lieutenant Steward's testimony included only a brief, vague reference to "narcotics tips" regarding appellant. And the State's questioning, regarding only why Steward was dispatched to the scene, does not appear to have been calculated to elicit the extraneous offense information. As appellant notes in his briefing, the State quickly admitted the impropriety and joined appellant's request for a limiting instruction.

Furthermore, the trial court quickly instructed the jury to disregard Lieutenant Steward's statement regarding "narcotics tips." Generally, an appellate court presumes that a jury has complied with a prompt instruction to disregard. *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). Thus, an error "in the admission of improper testimony is usually cured by the trial court's instruction to the jury to disregard." *Coe v. State*, 683 S.W.2d 431, 436 (Tex. Crim. App.

12

1984).  And, here, the jury also heard substantial evidence regarding appellant's guilt, including that he possessed 10 grams of methamphetamine, scales, and several bags recovered from the trunk of his car.  Accordingly, we hold that the trial court did not err in denying appellant's motion for a mistrial.

We overrule appellant's second issue.

## Admission of Evidence

In his third issue, appellant argues that the trial court erred in admitting into evidence a "switchblade knife" found in appellant's car and a "jail book-in card which reflected that [appellant] was unemployed and had tattoos" because their admission was more prejudicial than probative and they constitute evidence of extraneous offenses.  *See* TEX. R. EVID. 403, 404(b).

A trial court's admission of evidence is reviewed under an abuse of discretion standard.  *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  When considering a trial court's decision to admit or exclude evidence, we will not reverse a trial court's ruling unless it falls outside the "zone of reasonable disagreement."  *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. The opponent of the evidence must demonstrate that the negative attributes of the evidence substantially outweigh any probative value. *Montgomery*, 810 S.W.2d at 377. The relevant criteria in a rule 403 analysis include, but are not limited to: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Manning v. State*, 114 S.W.3d 922, 927 (Tex. Crim. App. 2003). Moreover, evidence of other crimes, wrongs, or acts is generally not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). Extraneous evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

Here, both the switchblade knife and the book-in sheet were relevant as evidence of appellant's intent to deliver narcotics, an element of the charged offense. The knife was discovered in the center console of appellant's car, directly underneath the marijuana that appellant admitted to having in his car. And the knife was discovered alongside other evidence obtained from appellant's car tending to prove his intent to deliver, including the digital scales and bags,

14

typically used to distribute narcotics, and a quantity of methamphetamine that Sergeant Andrews testified was consistent with an intent to deliver. Under these circumstances, the presence of a weapon can be used to demonstrate a defendant's intent to deliver. *See Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (holding officers had reasonable suspicion to frisk defendant suspected of trafficking cocaine because "weapons and violence are frequently associated with drug transactions") (quoting *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990)); *Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App.—Amarillo 2004, pet. ref'd) (noting that connection between weapons and drug trade is "rather settled"); *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (noting that intent to deliver may be proved by "evidence surrounding its possession"); *see also Wells v. State*, No. 08-09-00110-CR, 2010 WL 33009306, at *7 n.2 (Tex. App.—El Paso July 30, 2010, pet. ref'd) (not designated for publication) (stating that weapons recovered on defendant constituted "contextual evidence" that defendant had intent to deliver cocaine or heroin).

In regard to the notation on the book-in sheet that appellant was "unemployed," the State responded to appellant's objection by arguing:

> As to unemployed, I think that's relevant, Your Honor, given the nature of the charge of the allegation of the intent to deliver [and] the quantity of the drugs. And I think that that's – I think that's probative.

15

But as to the tattoos and the Class C offenses listed, we wouldn't object to redacting those.[4]

Sergeant Andrews estimated that the methamphetamine found in appellant's car was worth between $750 and $1,250. Even assuming that appellant's unemployment constitutes an "extraneous offense," such evidence would be relevant to link him to the methamphetamine and his status as a narcotics dealer, especially given the quantity of methamphetamine in his possession. *See, e.g., Evans v. State*, 202 S.W.3d 158, 165 (Tex. Crim. App. 2006) (noting that presence of large amount of narcotics and some cash "combined with the evidence that [defendant] did not have a job" tended to link defendant to narcotics); *Carroll v. State*, 266 S.W.3d 1, 3 (Tex. App.—Waco 2008, pet. ref'd) (noting presence of cash and large amount of cocaine, along with defendant's employment status, tended to link defendant to cocaine); *Williams v. State*, No. 14-01-00395-CR, 2002 WL 389437, at *2 (Tex. App.—Houston [14th Dist.] Mar. 14, 2002) (mem. op.) (not designated for publication) (stating that defendant's possession of $2500 to $3000 of cocaine was significant "in light of the fact that [defendant] was unemployed").

Furthermore, the State spent very little time focusing on either the knife or appellant's employment status at trial. The knife was admitted as part of several

_____

[4] Although appellant objected to the reference to his tattoos on the book-in sheet, the State agreed to redact that portion of the sheet, and the record indicates that the trial court redacted the reference.

16

items of evidence retrieved from appellant's car, and much more testimony was offered regarding the methamphetamine, the methamphetamine pipe, the bags, and the digital scales. Regarding appellant's employment status, the State elicited only a single line of testimony pertaining to it, when Sergeant Andrews testified that appellant told him that he was "unemployed." Thus, not only was the evidence probative, but the State spent very little time developing it and there was little risk that it would impress the jury in an irrational way.

Accordingly, we hold that the trial court did not err in admitting either the knife or the book-in sheet notation regarding appellant's employment status.

We overrule appellant's second and third issues.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

17